**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| FLORENCE L.,[1] ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Civil No. 3:22-cv-00654-MHL-SLS |
| ) | |
| MARTIN O'MALLEY, ) | |
| Commissioner of the ) | |
| Social Security Administration,[2] ) | |
| ) | |
| *Defendant.* ) | |
| ) | |

## REPORT AND RECOMMENDATION

In this action, Plaintiff Florence L. seeks review of the Commissioner of the Social Security Administration's ("SSA") decision to deny her Title II application for disability insurance benefits and Title XVI application for Supplemental Security Income ("SSI"). This matter comes before the Court for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment. (ECF Nos. 17, 20.) The motions have been fully briefed (ECF Nos. 17, 18, 20, 21), rendering this matter ripe for review.

Plaintiff requests that the Commissioner's decision be vacated and remanded for a *de novo* hearing and new decision. (Plaintiff's Memorandum of Law in Support of a Social Security Appeal (ECF No. 18) ("Pl.'s Mem.") at 18.) As the basis for such relief, Plaintiff argues that the

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he has been substituted for Acting Commissioner Kilolo Kijakazi as Defendant in this action. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

Administrative Law Judge ("ALJ") erred by: (1) improperly evaluating the medical opinion of Paula Allocca, Ph.D., P.M.H.N.P.-B.C. ("Dr. Allocca") (Pl.'s Mem. at 8-12); (2) failing to consider each of Plaintiff's mental health limitations in the residual functional capacity ("RFC") determination (Pl.'s Mem. at 16-18); and (3) refusing to recuse herself despite alleged bias (Pl.'s Mem. at 12-16).  In response, the Commissioner argues that the ALJ properly considered and analyzed Dr. Allocca's opinion in accordance with the regulations, fully considered Plaintiff's mental health limitations in fashioning the RFC, and correctly denied Plaintiff's requests for recusal.  (Defendant's Motion for Summary Judgment and Brief in Support Thereof (ECF No. 24) ("Def.'s Mem.") at 10-20.)

For the reasons set forth below, this Court finds that the ALJ properly assessed the medical opinion evidence in accordance with the regulations and fully considered Plaintiff's mental health limitations in determining the RFC and that substantial evidence supports the ALJ's mental RFC determination.  The Court also finds that the ALJ did not err in denying Plaintiff's recusal requests. Therefore, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 17) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 20) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits and SSI on April 6, 2019, alleging disability beginning November 20, 2018.  (Administrative Record ("R.") at 176, 250, 256.)[3]  In her application, Plaintiff alleged that she suffered from narcolepsy with cataplexy,

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for the year of birth), and financial account numbers from this Report and Recommendation. The Court

vertigo, postural orthostatic tachycardia syndrome ("POTS"), post-traumatic stress disorder ("PTSD"), anxiety, chronic depression, cervical radiculopathy spinal degenerate joint disease, migraines, myopathy, and small fiber neuropathy.  (R. at 90-91.)  The SSA denied Plaintiff's claims initially and again upon reconsideration.  (R. at 180-82, 188-93.)  Plaintiff requested a hearing before an ALJ, and one was held on October 14, 2021.  (R. at 51-79, 194-95.)

On November 3, 2021, the ALJ issued a written opinion, holding that Plaintiff was not disabled under the Social Security Act ("the Act").  (R. at 16-31.)  On August 8, 2022, the SSA Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (R. at 1-4.)  Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g) and § 1383(c).

## II.    STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ."  *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir.

---

will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

2015) (describing the ALJ's five-step sequential evaluation).  At step one, the ALJ must review the claimant's current work activity to determine if he or she has been participating in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  At step two, the ALJ must ask whether the claimant's medical impairments meet the regulations' severity and duration requirements.  *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  At step three, the ALJ must determine whether the medical impairment(s) meet or equal an impairment listed in the regulations.  *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  Between steps three and four, the ALJ must determine the claimant's RFC, which accounts for the most that the claimant can do despite his or her impairments.  *Id.* §§ 404.1545(a), 416.925(a).

At step four, the ALJ must assess whether the claimant can perform his or her past employment given the RFC.  *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude the claimant from performing his or her past relevant work.  *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).  If such past work can be performed, then benefits will not be awarded, and the analysis ends.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).  However, if the claimant cannot perform his or her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy.  *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The Commissioner usually offers this evidence through the testimony of a vocational expert.  *See Mascio*, 780 F.3d at 635.

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'"  *Mascio*, 780 F.3d at 634 (quoting *Bird v.*

*Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)).  Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion.  *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  The substantial evidence standard "presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts."  *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).  Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion.  *Id.*

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]."  *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see Craig*, 76 F.3d. at 589.  The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)).  If a fact is supported by substantial evidence, the reviewing court must affirm, regardless of whether the court agrees with such findings.  *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)).  If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the reviewing court must reverse the decision.  *See Breeden*, 493 F.2d at 1007.

### III.    THE ALJ'S DECISION

The ALJ analyzed Plaintiff's disability claim in accordance with the five-step evaluation process.  (R. at 16-31.)  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio*, 780 F.3d at 634.

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 20, 2018 (the alleged onset date).  (R. at 19.)  At step two, the ALJ determined Plaintiff suffered from the following severe impairments: degenerative joint disease, degenerative disc disease, migraine headaches, epilepsy/pseudo-seizures, narcolepsy with cataplexy, vertigo, depression, anxiety, and PTSD.  (R. at 19-20.)  At step three, the ALJ determined that Plaintiff did not have an impairment, individually or in combination, which met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 20-23.)

The ALJ then determined Plaintiff's RFC.  (R. at 23-29.)  Based on the evidence in the record, the ALJ found that Plaintiff retained the ability to perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> [Plaintiff] is able to understand, remember, and carry out simple instructions. [Plaintiff] can maintain concentration and persistence to perform unskilled work at a non-production (i.e. assembly line) pace in two hour increments in order to complete an eight hour workday.  [Plaintiff] is able to occasionally interact with the public and tolerate occasional changes in a routine work setting introduced gradually.  [Plaintiff] can tolerate no more than a moderate noise level.  In addition to normal breaks, [Plaintiff] will be off task five percent of the time in an eight hour workday.

(R. at 23.)[4]  The ALJ explained that she determined Plaintiff's RFC after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p."  (R. at 23.)

The ALJ outlined Plaintiff's mental health history and acknowledged Plaintiff's subjective complaints.  (R. at 24-28.)  The ALJ noted that Plaintiff was hospitalized in September 2018 after

---

[4] Because Plaintiff's assignments of errors are limited to the ALJ's conclusions regarding her mental impairments and resulting limitations, the Court limits its discussion to Plaintiff's mental health condition.

she was found unconscious.  (R. at 25.)  Although medical records showed a concern about depression, suicidal ideation, and a potential medication overdose, mental status evaluations remained grossly non-focal.  (R. at 25.)  After receiving stabilization services, Plaintiff "was discharged without significant problems of depression, psychosis, mania," or other mental health concerns.  (R. at 25.)  Later in 2018, Plaintiff was re-admitted for eight additional days of stabilization services following "ongoing concerns of psychiatric complications," transitioned to a partial program, and then discharged in early 2019 "having made good progress."  (R. at 25-26.)

Thereafter, Plaintiff continued to endorse symptoms complicated by financial stress, but reported benefits from her medications and received counseling on an outpatient basis.  (R. at 26.) Plaintiff complained of panic attacks and night terrors that interfered with her ability to work.  (R. at 24.)  She treated her symptoms through prescribed medications and once per month therapy sessions but continued to endorse thoughts of self-harm and claimed to have no more than one good day a week.  (R. at 24.)  Plaintiff stated she remained limited in her ability to complete tasks, concentrate, understand, socialize with others, and adjust to change.  (R. at 24.)  Yet, depending on the severity of her symptoms, Plaintiff could live with roommates, drive two to three times per month to doctor's appointments and to check her mail at her P.O. box, manage her finances, care for some personal hygiene needs, complete household chores, shop for personal items, and read, write, paint, or watch television.  (R. at 24.)  Similarly, Plaintiff reported to providers that she could "complete her activities of daily living independently, including bathing, dressing, eating, watching television, and completing some housework."  (R. at 26.)  A provider "observed normal conversational speech, appropriate mood, linear and logical thought processes, good short term recall, and no acute thought content irregularities."  (R. at 26.)  Mental status evaluations remained grossly non-focal.  (R. at 27.)  While Plaintiff reported that her depression and anxiety remained

at moderate to high severity, she otherwise reported doing well on current medications.  (R. at 27.)  Counseling records noted both improvements and periods of regression.  (R. at 27.)  The ALJ acknowledged Plaintiff's claim that her functional capabilities fluctuated with her symptoms and that she often required periods of rest.  (R. at 24.)

After considering the evidence, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ."  (R. at 24.)  Although Plaintiff endorsed problems in mental functioning and ongoing symptoms, the ALJ found moderate limitations appropriate based on: (1) her largely conservative, routine, and outpatient mental health treatment; (2) mental status evaluations generally reflecting no acute complications with thought content; and (3) Plaintiff's ability to care for personal hygiene needs, prepare meals, assist with household chores, drive, count change and handle a savings account, interact with friends, maintain medical appointments, watch television, shop for personal items, care for a cat, wash laundry, clean dishes, iron, read, and paint.  (R. at 22, 24, 29.)  In making this finding the ALJ explained:

> [T]he record consistently documents treatment for symptoms of depression and anxiety, with complications including hospitalizations in 2018.  After her initial symptoms were stabilized, the remaining records during the period at issue document mental health treatment that was conservative, routine, and outpatient. [Plaintiff] demonstrated some evidence of improvements with medication and therapy, and treating examiners continued to recommend outpatient follow up. There is no further evidence of a mental health hospitalization or a symptom exacerbation resulting in a loss of adaptive functioning,  In spite of her symptoms and medication side effects, the record reflects that she retains at least some capacity to care for some personal hygiene needs, care for a cat, prepare some meals, wash laundry, clean dishes, iron, clean her kitchen and bathroom, read, paint, watch television, shop for personal items, handle her finances, and maintain medical appointments depending on the severity of her symptoms.  Therefore, the undersigned concludes that [Plaintiff's] allegations are not entirely consistent with the adopted residual functional capacity, because they are not supported by the conservative and grossly outpatient treatment history during the period at issue, the

clinical and examination findings of no acute complications, and [Plaintiff's] stated ongoing capabilities.

(R. at 27-28 (internal record citations omitted).)

The ALJ also "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c." (R. at 23.) The ALJ reviewed the opinion of Jihad Aziz, Ph.D. ("Dr. Aziz"), who found Plaintiff had the ability to perform detailed tasks on a consistent basis independently, but that she would have moderate difficulty maintaining attendance and dealing with usual stressors. (R. at 26.) The ALJ found Dr. Aziz's conclusions to be somewhat persuasive, as they were "supported by the clinical findings at the time of the evaluation. [However] [t]he updated evidence submitted at the hearing level and [Plaintiff's] longitudinal subjective complaints [were] more consistent with the moderate restrictions in" areas of mental functioning. (R. at 26.)

The ALJ considered opinions from state agency examiners, who found Plaintiff retained the capacity to perform light work with frequent to occasional postural activities and should avoid concentrated exposure to vibrations, with corresponding mental non-exertional restrictions. (R. at 28.) These consultants opined that Plaintiff had moderate mental limitations with respect to understanding, remembering, applying information, concentration, persistence, social interaction, and maintaining pace. (R. at 28.) On reconsideration, the examiners adopted similar conclusions. (R. at 28.) The ALJ found these opinions to be somewhat persuasive because they were supported by referenced findings in the record regarding Plaintiff's exertional capacity restrictions. (R. at 28.) However, the ALJ found that the "additional evidence submitted at the hearing level, including [Plaintiff's] testimony when considered under the provisions of [SSR] 16-3p, support[ed] the additional adopted non-exertional limitations" in the RFC. (R. at 28.)

9

The ALJ next weighed the medical opinion of Dr. Allocca, Plaintiff's treating psychiatric provider.  (R. at 28.)  Dr. Allocca submitted separate assessments completed January 15, 2020 (R. at 1516-23) and April 1, 2021 (R. at 1734-36).  The ALJ noted that Dr. Allocca:

> [e]ndorsed marked to extreme restrictions in workplace mental functional capabilities.  The January 15, 2020 assessment concluded she could only work on a part-time basis at a job she was very comfortable with.  The April 1, 2021 assessment stated that the marked to extreme limitations were endorsed by the severity of depressed mood, increased levels of anxiety, and problems identifying healthy boundaries due to past stressors. The undersigned similarly finds the conclusions of [Dr.] Allocca to be not persuasive, as the findings are conclusory and not supported by referenced findings in the longitudinal treatment history.  The mental conclusions are not consistent with the stable and grossly normal clinical and examination findings with regular medication compliance and adjustments following her 2018 hospitalization or [Plaintiff's] stated ongoing functional capabilities.

(R. at 28-29 (internal record citations omitted).)

After completing the RFC assessment, the ALJ then determined Plaintiff's vocational factors.  She found that Plaintiff was unable to perform any past relevant work (namely, as a medical assistant), met the definition of a younger individual, and had at least a high school education.  (R. at 29.)

At step five, the ALJ concluded that there were jobs in significant national numbers that Plaintiff could perform given her limitations.  (R. at 30.)  The ALJ adopted the Vocational Expert's testimony that Plaintiff could perform the jobs of marker and router.  (R. at 30.)

## IV.     ANALYSIS

### A.  The ALJ Applied Correct Legal Standards in Assessing Medical Opinion Evidence, the ALJ Reasonably Considered Plaintiff's Mental Limitations in Determining the RFC, and Substantial Evidence Supports the ALJ's Findings

In reviewing the Commissioner's decision to deny Plaintiff's application, the Court must determine whether: (1) the ALJ has applied the correct legal standards; and (2) the ALJ's findings

are supported by substantial evidence. *Mascio*, 780 F.3d at 634 (citing *Bird*, 699 F.3d at 340). "In reviewing for substantial evidence, [a court must not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). Consequently, as long as the judgment is explained and supported by substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a *de novo* review of the record. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Rhyne v. Astrue*, No. 3:09-cv-412, 2011 WL 1239800, at *3 (W.D.N.C. Mar. 30, 2011).

For the reasons that follow, this Court finds that the ALJ properly assessed the medical opinion evidence in accordance with the regulations, the ALJ reasonably considered Plaintiff's mental limitations in the RFC determination, and substantial evidence supports the ALJ's mental RFC determination.

1. *The ALJ Applied Correct Legal Standards in Evaluating Dr. Allocca's Opinion and Substantial Evidence Supports the ALJ's Determinations*

Plaintiff accuses the ALJ of committing two errors with respect to her assessment of Dr. Allocca's medical opinion. First, Plaintiff argues that the ALJ improperly rejected Dr. Allocca's opinion evidence by failing to conduct a proper supportability and consistency analysis and failing to tie the evidence to the record. (Pl.'s Mem. at 9-10.) Second, Plaintiff accuses the ALJ of cherry-picking certain mental status findings and relying too heavily on normal mental examination findings. (Pl.'s Mem. at 10-12.) The Court addresses both arguments below and finds no reversible error in the ALJ's opinion.

a.   Standard for Evaluating Medical Opinion Evidence for Claims Filed on
or After March 27, 2017

Claims involving medical opinion evidence filed on or after March 27, 2017 are evaluated

using a revised regulatory framework. *See Revisions to Rules Regarding the Evaluation of Medical*

*Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. 20 C.F.R. §§

404.1520c, 416.920c.  This framework applies in Plaintiff's case.  (Pl.'s Mem. at 8.)  The revised

regulations provide that the ALJ will no longer "defer or give any specific evidentiary weight,

including controlling weight, to any medical opinion(s) . . . ."  *Revisions to Rules*, 2017 WL

168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, an

ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative

medical findings from medical sources, no matter the source.  20 C.F.R. §§ 404.1520c(a)-(b),

416.920c(a).

Under the regulations, the ALJ must evaluate each medical opinion and articulate the

"persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2)

consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend

to support or contradict the medical opinion[,]" including familiarity with the other evidence or

understanding of disability program policies and requirements.  *Id*. §§ 404.1520c, 416.920c(b)-

(c).  Supportability and consistency are the "most important" factors, and the ALJ must discuss

how these factors were considered in the written opinion.  *Id*. §§ 404.1520c(b)(2), 416.920c(b)(2).

The regulations define supportability and consistency as follows:

(1) *Supportability*. The more relevant the objective medical evidence and
supporting explanations presented by a medical source are to support his or her
medical opinion(s) or prior administrative medical finding(s), the more persuasive
the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency*. The more consistent a medical opinion(s) or prior administrative
medical finding(s) is with the evidence from other medical sources and nonmedical

sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

  b. <u>The ALJ Sufficiently Explained Her Findings Regarding the Supportability and Consistency of Dr. Allocca's Opinion</u>

The ALJ sufficiently explained the factors of supportability and consistency in her analysis of Dr. Allocca's opinion and tied the evidence to the record.

The ALJ first found that Dr. Allocca's opinions were "conclusory and not supported by referenced findings in the longitudinal treatment history."  (R. at 29.)  On the April 1, 2021 form, Dr. Allocca opined that Plaintiff had extreme restrictions in her ability to understand, remember, and carry out detailed instructions; marked limitation in the ability to make judgments on simple work-related decisions; and moderate limitations in her ability to understand, remember, and carry out short, simple instructions.  (R. at 1734.)  When asked to proffer what medical or clinical findings support these assessments, Dr. Allocca wrote "hyperarousal, [increased] panic/anxiety, [and decreased] focus/concentration."  (R. at 1734.)  Dr. Allocca further noted that Plaintiff had both a marked and extreme limitation in her ability to respond appropriately to work pressure; another marked limitation in her ability to respond appropriately to changes in a work setting; and moderate limitations in her ability to interact appropriately with the public, with supervisor(s), and with coworkers.  (R. at 1735.)  When asked to proffer support for these assessments, Dr. Allocca wrote "severity of depressed mood, [increased] levels of anxiety, problems identifying healthy boundaries due to past/current issues/stressors."  (R. at 1735.)  Dr. Allocca noted that Plaintiff's ability to be consistent was affected, and listed "anxiety, trauma/stressor occurrences" as medical or clinical findings that support that assessment.  (R. at 1735.)  In her January 15, 2020 report, Dr.

Allocca did not provide any medical or clinical findings to support her conclusions.  (R. at 1516-23.)

The Court finds no reversible error in the ALJ's determination that Dr. Allocca's opinion failed to "reference[] findings in the longitudinal treatment history" and therefore was not supported.  (R. at 29.)  Indeed, the ALJ's conclusion is supported by "more than a scintilla" of evidence.  *See Hancock*, 667 F.3d at 472; *Craig*, 76 F.3d at 58.  Specifically, Dr. Allocca failed to include medical or clinical findings to support her assessments and instead provided conclusory symptoms or impairments which had already been considered by the ALJ in arriving at the RFC.

The ALJ also determined that Dr. Allocca's "mental conclusions are not consistent with the stable and grossly normal clinical and examination findings with regular medication compliance and adjustments following her 2018 hospitalization or [Plaintiff's] stated ongoing functional capabilities."  (R. at 29.)  Plaintiff contends this does not constitute a proper consistency analysis.  (Pl.'s Mem. at 10.)  However, the ALJ need not use a particular format or any magic words for articulating consistency.  *Todd A. v. Kijakazi*, 2021 WL 5348668, at *4 (E.D. Va. Nov. 16, 2021).  Moreover, the Court does not read that sentence of the ALJ's opinion in isolation.  *Id.* at *4 (finding that the ALJ's opinion must be read as a whole).  And here, the ALJ's decision previously detailed the conservative and routine mental health treatment received following Plaintiff's hospitalization and stabilization, the mental health examination findings, and Plaintiff's stated ongoing capabilities.  (R. at 27-28.)  Thus, the ALJ conducted a proper consistency analysis.

c. <u>The ALJ Did Not Cherry-Pick the Evidence or Improperly Rely on Examination Findings in Determining the RFC</u>

Plaintiff next argues that the ALJ improperly "ignores the impairments documented in Dr. Allocca's treatment notes and focuses on minor observations of normality in areas that Plaintiff was not complaining of symptoms." (Pl.'s Mem. at 10.)  The Court finds otherwise.

The ALJ fully considered Plaintiff's reported symptoms from anxiety and depression and relied on multiple sources of mental health evidence to reach her conclusions.  For example, the ALJ considered Plaintiff's ongoing capabilities despite her symptoms and medication side effects. (R. at 27-28.)  Indeed, the ALJ noted Plaintiff's own report of her abilities to care for her pet cat, prepare simple meals, take care of some personal hygiene needs, do the laundry, shop in person, handle a savings account, read, and maintain medical appointments.  (R. at 24.)  The ALJ also considered a medical consultant report that stated Plaintiff could perform basic daily activities, such as bathing, dressing, and eating, on her own.  (R. at 26.)  The ALJ considered Plaintiff's depression, suicidal ideation, and medication overdose in 2018, her subsequent hospitalization and discharge, and her readmittance into stabilization services.  (R. at 25-26.)  The ALJ acknowledged Plaintiff's reported symptoms due to financial stress, but also noted that Plaintiff was responding to medication and therapy services.  (R. at 26.)  The ALJ also noted Dr. Allocca's treatment notes which characterize Plaintiff's depression and anxiety at a moderate to high level of severity.  (R. at 27.)  The ALJ considered Plaintiff's ongoing limitations from her depression and anxiety, and never suggested that her progress was linear.  Rather, the ALJ noted that Plaintiff indeed had "physical and mental chronic conditions," that Plaintiff's capabilities depended on the severity of her symptoms on a given day, and that Plaintiff's treatment for depression and anxiety was largely conservative and routine.  (R. at 27-28.)

Thus, the ALJ did not cherry-pick "good" evidence from the "bad" to support her conclusions. *See Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 362 (4th Cir. 2023). Nor did the ALJ improperly rely on normal clinical and examination findings while turning a blind eye to other record evidence. Instead, the ALJ considered a multitude of sources, including Plaintiff's reported symptoms, medical history, the diagnoses, the side effects of medication, and the benefits of her therapy and medication. The Court finds no error in the ALJ's thorough analysis. To the extent Plaintiff argues that the ALJ should have weighed conflicting evidence differently, the Court declines to substitute its judgment for that of the ALJ. *See Hancock*, 667 F.3d at 472, 476.

### 2. The ALJ Properly Considered Limitations Stemming from Plaintiff's Mental Impairments in Determining the RFC

Plaintiff next contends that the ALJ failed to include each of her mental health limitations in the RFC. (Pl.'s Mem. at 16-18.) Specifically, she argues the RFC contains no limitations regarding Plaintiff's ability to concentrate and persist or adapt and manage. (Pl.'s Mem. at 17.) She also asserts that the ALJ failed to explain her conclusions regarding how Plaintiff's mental limitations affect her ability to perform job-related tasks for a full workday. (Pl.'s Mem. at 18.) The Court finds that the ALJ reasonably accounted for Plaintiff's mental functional limitations in the RFC and sufficiently explained how she made those determinations.

Despite Plaintiff's contention otherwise, the ALJ's RFC explicitly contains restrictions to account for Plaintiff's mental limitations. Specifically, it provides:

[Plaintiff] is able to understand, remember, and carry out simple instructions. [Plaintiff] can maintain concentration and persistence to perform unskilled work at a non-production (i.e. assembly line) pace in two hour increments in order to complete an eight hour workday. [Plaintiff] is able to occasionally interact with the public and tolerate occasional changes in a routine work setting introduced gradually. [Plaintiff] can tolerate no more than a moderate noise level. In addition

to normal breaks, [Plaintiff] will be off task five percent of the time in an eight hour workday.

(R. at 23.)  The ALJ addressed Plaintiff's limitations in concentration and persistence by finding that she can maintain concentration and persistence in unskilled work at a slower pace for two hours at a time, further adding that she cannot tolerate more than a moderate noise level and would be off task five percent of an eight-hour workday in addition to normal breaks.  (R. at 23.)  The ALJ addressed Plaintiff's limitations in adapting or managing by restricting her interactions with the public and noting changes in the workplace must be occasional and introduced gradually.  (R. at 23.)  The ALJ found these limitations consistent with "the moderate restrictions in functioning given the mental health treatment history discussed above and ongoing symptoms present at follow-up evaluations."  (R. at 29.)  The Court finds that the ALJ reasonably accounted for Plaintiff's mental impairments in the RFC determination.

Plaintiff next argues that the ALJ failed to draw "explicit conclusion[s] about how [her] 'mental limitations affect [her] ability to perform job-related tasks for a full workday....'"  (Pl.'s Mem. at 18 (quoting *Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019)).)  The Court disagrees and finds the *Thomas* decision distinguishable.  In *Thomas*, the ALJ erred "by failing to provide a logical explanation of how she weighed the record evidence and arrived at her RFC findings," including failing to draw "explicit conclusions" about how mental limitations affected the claimant's ability to work.  916 F.3d at 311, 312.  Here, on the other hand, the ALJ detailed Plaintiff's mental health treatment history, considered Plaintiff's subjective complaints, assessed medical opinions from mental healthcare providers and consultants, and analyzed Plaintiff's daily activities.  (R. at 22-29.)  The ALJ concluded that Plaintiff suffered from moderate limitations in functioning due to her mental impairments and explained that the RFC accounted for such moderate limitations.  (R. at 29.)  The ALJ's explanations allow for a meaningful review, and her

17

conclusions find substantial support in the record.  Therefore, the Court finds no error warranting remand.

**B.  The ALJ Did Not Err in Denying Recusal Requests Made by Plaintiff's Former Counsel**

Plaintiff argues that the ALJ erred in denying her former counsel's recusal requests in two ways.  First, Plaintiff argues that the ALJ should have recused herself from this matter under 28 U.S.C. § 455(a), which directs judges of the United States to disqualify themselves in proceedings where their impartiality may be questioned.  (Pl.'s Mem. at 13.)  Second, she contends that 20 C.F.R. §§ 404.940 and 416.1440 and the SSA's Hearings, Appeals, and Litigation Law Manual ("HALLEX") required the ALJ's recusal because it mandates recusal where the ALJ is prejudiced or partial or where there is an appearance of bias.  (Pl.'s Mem. at 13 (citing Soc. Sec. Admin., Hearings, Appeals, and Litigation Law Manual ("HALLEX") I-2-1-60(A) (2016)).)

For the reasons set forth below, the Court finds that 28 U.S.C. § 455(a) does not apply to ALJs, that governing regulations require Plaintiff to carry a heavy burden of showing actual prejudice warranting recusal, and that Plaintiff did not meet that burden.  Therefore, the Court finds no denial of due process and no error warranting remand in the ALJ's refusal to recuse herself.

*1.  Record Evidence Regarding the Recusal Requests*

On November 20, 2019, Plaintiff's former counsel, who represented her before the SSA, filed a complaint against the ALJ with the Division of Quality Services ("DQS"), alleging "spite and personal animus" from the ALJ toward counsel.  (R. at 385-89.)  On June 1, 2021, Plaintiff's former counsel wrote to the ALJ, requesting that she recuse herself from the hearing scheduled for June 9, 2021 due to the still-pending complaint.  (R. at 385.)  Counsel argued "[i]t would be highly inappropriate for [the ALJ] to continue hearing cases in which [the attorney was] counsel of record

18

while this matter is still pending." (R. at 385.) Counsel further contended that the appearance of bias warranted recusal under 28 U.S.C. § 455(a), which directs judges to disqualify themselves in any proceedings in which their impartiality might reasonably be questioned. (R. at 385.)

The ALJ responded by letter dated June 7, 2021. (R. at 238.) Therein, she recognized her obligation to be impartial, stating that she "must disqualify or recuse . . . herself from adjudicating a case if the ALJ is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." (R. at 238.) The ALJ also cited HALLEX section I-2-1-60(A), which prohibits "blanket recusals on multiple cases, regardless of the reason." (R. at 238.) Instead, the ALJ acknowledged that she must make recusal decisions on a case-by-case basis. (R. at 238.) The ALJ then denied the recusal request to the extent counsel's letter was a blanket request that the ALJ recuse herself from all proceedings in which he served as counsel of record. (R. at 238.) The ALJ also denied the request to recuse herself from hearing Plaintiff's claim. (R. at 238.) Specifically, the ALJ stated that counsel failed to provide "any objective evidence to show that [the ALJ is] prejudiced or partial with respect to any party in this case or ha[s] any interest in the outcome of this matter, other than [counsel's] subjective belief." (R. at 238.) The ALJ concluded: "My decisions have always been based upon the evidence in each case, which includes the exhibits that are entered into the record, the testimony taken at hearing and the Social Security Act and regulations. As such, I find no reasonable and proper grounds for disqualifying myself from the current matter." (R. at 238.)

On October 11, 2021, counsel again submitted a letter requesting that the ALJ recuse herself from an October 14, 2021 hearing. (R. at 407.) The letter attached an amended complaint filed with the DQS dated that same day. (R. at 407.) Counsel argued that the ALJ's reliance on

HALLEX I-2-1-60(A) was misplaced, as "recusal is allowed if participation in the case would give an appearance of impropriety."  (R. at 407.)

At the October 14, 2021 hearing, the ALJ acknowledged the initial recusal request, her initial denial letter, and the renewed recusal request.  (R. at 51.)  The ALJ again denied counsel's request to recuse.  (R. at 51.)  In her formal decision, the ALJ once again found "no evidence submitted to show prejudice other than allegations" and that there continued to be "no reasonable and proper grounds to support her disqualification."  (R. at 16-17.)

2.  *The Recusal Standard under 28 U.S.C. § 455(a) Does Not Apply to the ALJ*

Title 28 of the United States Code section 455 provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a).  Under 28 U.S.C. § 451, this recusal standard applies only to Supreme Court justices and "judges of the courts of appeals, district courts, Court of International Trade and any court created by Act of Congress, the judges of which are entitled to hold office during good behavior."  28 U.S.C. § 451.  Plaintiff argues this standard applies to ALJs because they "exist in a court 'created by Act of Congress.'"  (Pl.'s Reply at 3 (ECF No. 21).)  The Court finds otherwise.

The SSA's Office of Hearing Operations, and not a court created by Congress, employs the ALJs.  20 C.F.R. §§ 404.2(b)(3), 416.120(b)(3); *see also Bunnell v. Barnhart*, 336 F.3d 1112, 1114 (9th Cir. 2003) (noting that ALJs "are employed by the agency whose action they review").  As other courts have recognized, if the appearance of impropriety standard applied to ALJs, "they would be forced to recuse themselves in every case" given their employer.  *Bunnell*, 336 F.3d at 1114; *Greenberg v. Bd. of Governors of Fed. Reserve Sys.*, 968 F.2d 164, 166-67 (2d Cir. 1992);

*Harline v. Drug Enforcement Admin.*, 148 F.3d 1119, 1204 (10th Cir. 1998).[5]  Because ALJs do not serve as judges of a United States court, 28 U.S.C. § 455(a) does not apply to them.

### 3. *The ALJ Did Not Err in Finding that Neither Applicable Regulations nor HALLEX Required Her Recusal*

Relevant portions of the disability insurance and SSI federal regulations mandate that an ALJ "shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision."  20 C.F.R. §§ 404.940, 416.1440.  These regulations make clear that *actual* prejudice, not the *possible* appearance of bias, requires recusal. *Schrader v. Astrue*, 2013 WL 1192315, at *3-4 (N.D. W. Va. Mar. 22, 2013); *see also Bunnell*, 336 F.3d at 1115 ("This regulation mentions only actual prejudice; nothing in this regulation mandates recusal for the mere appearance of impropriety.").[6]  Here, the ALJ reasonably determined that Plaintiff's former counsel had presented no evidence of *actual* prejudice, thereby making recusal unwarranted.  (R. at 16-17, 238.)

Plaintiff, however, argues that HALLEX I-2-1-60(A) incorporates the "appearance of impropriety" standard.  HALLEX I-2-1-60(A) cites the above-referenced C.F.R. subsections and reiterates that an ALJ "*must* disqualify or recuse himself or herself from adjudicating a case if the ALJ is prejudiced or partial with respect to any party or has any interest in the matter pending for decision."  HALLEX I-2-1-60(A) (emphasis added).  It later states that "an ALJ *may* withdraw from the case if: . . . The ALJ believes his or her participation in the case would give an appearance

---

[5] Plaintiff cites two cases to support her argument that 28 U.S.C. § 455(a) applies to ALJs, but both cases discuss the recusal standard applicable to United States District Judges, not ALJs.  (Pl.'s Mem. at 13 (citing *United States v. Davis*, 801 F. App'x 75, 76-78 (4th Cir. 2020); *Fideicomiso De La Tierra del Cano Martin Pena v. Fortuno*, 631 F. Supp. 2d 134, 136 (D.P.R. 2009)).)

[6] The *Cloud v. Berryhill* decision cited by Plaintiff in her Reply Brief (ECF No. 21) also recognizes this, stating: "To disqualify an ALJ, the party making the assertion must show actual bias, not just an 'appearance of impropriety.'"  2017 WL 7101266, at *10 (N.D. W. Va. Oct. 17, 2017), *report and recommendation adopted by* 2018 WL 606139 (N.D. W. Va. Jan. 29, 2018).

of impropriety." HALLEX I-2-1-60(A) (emphasis added). Importantly, it also prohibits "blanket recusals on multiple cases, regardless of reason," and directs ALJs to make recusal decisions on a "case-by-case basis and with regard to the ALJ's ability to provide a fair hearing to the claimant." HALLEX I-2-1-60(A).

As an initial matter, while HALLEX does reference the "appearance of impropriety" standard, "because HALLEX is an agency manual which lacks the force of law, this Court cannot force the Commissioner to follow it or provide a remedy to a claimant who avers that the Commissioner did not follow it." *Schrader*, 2013 WL 1192315, at *3; *see also Bunnell*, 336 F.3d at 1115 (quoting *Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir. 2000)) (finding that HALLEX "'has no legal force and is not binding'").[7] In any event, even if HALLEX did impose a judicially enforceable duty, it did not require recusal in a situation such as the one presented here.

Plaintiff argues that the "active and unresolved complaint" filed by her former counsel establishes "actual bias." (Plaintiff's Reply ("Pl.'s Reply") (ECF No. 21) at 4.) The Court disagrees. "[T]he Supreme Court has established a presumption that ALJs act without bias." *Suarez v. Berryhill*, 2019 WL 959606, at *21 (E.D. Va. Jan. 28, 2019), *report and recommendation adopted by* 2019 WL 943389 (E.D. Va. Feb. 26, 2019) (citing *Schweiker v. McClure*, 456 U.S.

---

[7] Plaintiff also argues that the ALJ did not comply with the procedure outlined in HALLEX for handling recusal requests by failing to provide a "pre-hearing response" to her counsel's second recusal request. (Pl.'s Mem. at 13-14 (citing HALLEX I-2-1-60(C)).) As found above, HALLEX does not impose a judicially enforceable duty. Even if it did, the Court finds that the ALJ complied with HALLEX I-2-1-60(C), which only requires a written pre-hearing response "[w]hen sufficient time" allows the ALJ to decide the issue before the hearing. HALLEX I-2-1-60(C). Here, the ALJ responded to the initial recusal request in writing. (R. at 238.) When there was "insufficient time before a hearing for the ALJ to respond" in writing to the renewed request, which came three days before the October 14, 2021 hearing, the ALJ acknowledged both the initial and renewed request at the hearing, incorporated her prior denial, and also denied the renewed request for the same reasons. (R. at 51.) The ALJ reiterated her denial in her written decision. (R. at 16-17.) This complies with the procedure outlined by HALLEX I-2-1-60(C).

188, 195 (1982)).  As Plaintiff concedes (Pl.'s Mem. at 14), she "bears the heavy burden of rebutting this presumption."  *Suarez*, 2019 WL 959606, at *21.  Her former counsel's complaint against the ALJ alone fails to satisfy that heavy burden.  *See Bunnell*, 336 F.3d at 1114 (finding recusal not required where the claimant's attorney had brought a lawsuit against the Commissioner as well as three ALJs, including the ALJ assigned to the claimant's case); *Suarez*, 2019 WL 959606, at *22 (finding recusal not required where the claimant had sent an informal letter to the SSA and the claimant's wife sent a letter to the Appeals Council alleging that the ALJ had discriminated against the claimant).  To find otherwise would suggest that parties could "easily obtain[] the disqualification of a judge" by filing an internal complaint "thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking." *Belue v. Leventhal*, 640 F.3d 567, 574 (4th Cir. 2011).  The Fourth Circuit has emphasized that courts should set a high bar for recusal to avoid such a result.  *Id.*

Here, the ALJ properly declined a blanket request that she recuse herself in all cases in which Plaintiff's former counsel served as counsel of record.  She then considered the recusal request on a case-by-case basis, determined Plaintiff presented no evidence of actual prejudice, and found no other reasonable or proper grounds for her disqualification.  Governing regulations and HALLEX I-2-1-60(A) did not mandate recusal under these facts.

## V.   CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 17) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 20) be GRANTED, and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge M. Hannah Lauck and to all counsel of record.

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

_____ /s/

Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: January 9, 2024

24